ARDEN, (SMITH v.) See Case No. 13,003.
ARDEN, (YATES v.) See Case No. 18,126.

---

## Case No. 511.
### ARDREY v. KARTHAUS.
[Taney, 379.][1]

Circuit Court, D. Maryland. April Term, 1836.

SEAMEN—"FREIGHT THE MOTHER OF WAGES"—PRIZE CAPTURE—CONDEMNATION.

1. A vessel owned by the respondent, a citizen of the United States, was captured by a British cruiser, during the last war with Great Britain, near San Andres, in Spain, within a mile of the shore, and within the jurisdiction of Spain, with which nation the United States were then at peace: the owner put in a claim, under the Florida treaty, on the ground that Spain had not discharged her neutral obligations in this matter, and was bound, therefore, to make reparation for the injury sustained by him: he was allowed, on account of such claim, for the vessel and cargo, and for the outward freight, but the amount awarded and received fell far short of the

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

amount found to be due: the libellant was mate of the vessel, at the time of the capture, and was detained as a prisoner of war, until exchanged, when he returned to the United States, after the lapse of more than a year from the time he had left, having earned no wages after he left the vessel. On a libel filed by him against the owner of the vessel, to recover his wages up to the time of his return to the United States: *Held*, That where freight is earned, or damages recovered in lieu of it, the seamen are entitled to wages.
[See Adams v. The Sophia, Case No. 65.]

2. That the only exception to this rule is, the case of recovery against the underwriters.
[See The Saratoga, Case No. 12,355, and The Two Catherines, Id. 14,288.]

3. That capture by a public enemy forms no such exception.

4. That wages were recoverable in this case only to the day of condemnation, and that no deduction should be made from them, on account of the insufficiency of the sum received by the owner to cover his whole loss.

In admiralty. Circuit court, April term, 1836. Appeal from the district court, in admiralty.

This was an appeal from the decree of the district court, upon a libel filed by Ardrey for wages, against Karthaus, the respondent. Ardrey shipped as a mate on board the schooner Baltimore, owned by Karthaus, who loaded her on his own account, and she sailed from Baltimore for Bordeaux, during the last war with Great Britain; being driven out of her course by the pursuit of enemies, she was finally captured by a British cruiser, on the voyage from San Andres, in Spain, within a mile of the shore, and within the jurisdiction of Spain, with which nation the United States were then at peace. She was carried into San Andres, and detained there a few days, and then carried to an English port, where she was condemned as prize, and the libellant, who had remained on board until her arrival in England, was detained as prisoner of war; after some considerable detention, he was exchanged and returned to the United States at least twelve months after he sailed, but as soon as he could, after his release by the enemy, and having earned no wages after he left this vessel. Karthaus put in a claim under the Florida treaty, upon the ground, that Spain had not discharged her neutral obligations to the United States in this matter, and was therefore bound to make reparation for the injury sustained, and that this was among the wrongs provided for by that treaty. The commissioners decided in favor of the claim for vessel and cargo, and also including freight on the outward voyage, and the respondent received the amount awarded, but which, like all other awards under that treaty, fell far short of the amount found to be due, because the fund provided by the treaty fell short of the valid claims against Spain. The libellant claimed wages until his return to the United States; many objections were raised, and the points fully argued on both sides; the libel

was dismissed in the district court, where the decree was pro forma, and the case brought to the circuit court by appeal from this decree. The points discussed in the argument will be seen from the opinion delivered by the court.

J. Glenn, for appellant.

C. F. Mayer, for appellee.

TANEY, Circuit Justice. The main point in this case appears to be a new one, and we are not aware of any case in which it has been directly decided; we must form our judgment, therefore, upon those principles which have been settled in analogous cases. The general rule is, that freight is the mother of wages, and where freight is earned, or damages recovered in lieu of it, the seamen are entitled to wages. It has frequently happened that. after the capture of a neutral vessel, and condemnation and sale, the sentence has been reversed in the appellate court, and restoration ordered, and in such cases, where the owner recovers freight, the seamen are, undoubtedly, entitled to wages. The only exception to the rule is, the case of recovery against the underwriters. But that exception stands entirely on principles of policy; for as a seaman is not permitted to insure his own wages (and such a contract of insurance would be void in law), he cannot, for the same reason, protect his wages under the insurance of the owner; for that would allow him to accomplish indirectly what he is not permitted to accomplish directly.

We are not aware of any other exception to the rule above mentioned. The case of collision at sea has been referred to. Without meaning to impeach the decision in the case cited from the Massachusetts Reports,[2] it may be proper to say, that no other case has been adduced upon the same subject, nor does the point appear to have been very deliberately examined in that case. It can, therefore, hardly be regarded as a settled rule of law, and if it could be so regarded, there are reasons sufficient to distinguish it from damages paid for freight under a decree of restitution, or by public treaty, or any other analogous proceeding. For as the damages given by a jury in a case of collision, would be a gross sum, it would commonly be difficult, and often impossible, to ascertain whether freight was allowed or not, for the voyage; or if allowed at all. to what amount, and upon what principles. The verdict of the jury being for a gross amount of damages, and there being no written and authentic document showing the items which produced this gross amount, it would be difficult, in many cases, by the oral testimony of the jurors, to come to any certain conclusion; for some of the jurors might have arrived at the conclusion as to the proper amount of the result, by allowing

freight, some without allowing it, and often the amount would be a compromise of conflicting opinions, without reference to any particular item, or any settled principle agreed on by the whole jury. The case of collision is not, therefore, an exception to the rule, but stands on principles peculiar to itself.

The court consider the general rule to be as above stated; that wherever freight is earned, or damages recovered in lieu of freight, the seamen are entitled to wages, and that the only exception to it is, the case of recovery against the underwriters, which rests upon principles of policy, as above mentioned. It is now contended, that capture by a public enemy ought also to be made another exception to the rule; the court do not see any principle of justice upon which this exception can be introduced; and they certainly would not be disposed, in the absence of any precedent, to sanction such an exception upon mere technical principles. If, in this case, after the capture, there was no spes recuperandi, and the case on that account distinguishable from the capture of a neutral, it would not affect the application of the rule; for, if without hope, and even against hope, the owner afterwards recovered damages in lieu of freight, the claim to wages is within both the letter and the spirit of the rule before stated. The wages of the seamen depend upon a fact—was freight earned? or were damages recovered by the owner in lieu of freight? If either of these facts is shown, it is sufficient; it does not matter whether the owner had or had not a right to hope for such an issue, upon strict legal principles. It is well settled that, in case of capture by an enemy, if the vessel is recaptured and freight earned, the seamen are entitled to their wages for the voyage. It would be difficult, indeed, to find a reason why they should not be entitled to wages in such a case, and equally difficult to assign a reason why they should not be also entitled, where the vessel, or the value of it, was restored to the owner, from any cause whatever, and damages paid to him in lieu of his freight.

But in this case there was a well-grounded spes recuperandi; for although, as between the American owner and the British captor, the American owner had no right to complain, nor any defence to make against condemnation in the prize courts of England; yet, as the capture was made within the territorial limits of Spain, and Spain was neutral, the American had a right to demand protection from the Spanish government; Spain was bound to interpose, and if she did not, she failed in her neutral obligations, and the American had a right to demand compensation from her. A neutral power is not at liberty to decide, according to her own convenience, whether she will perform her neutral obligations or not; she is bound to perform them, and if she fails to do so,

[2][See Frothingham v. Prince, 3 Mass. 563.]

ARDREY (Case No. 512)                    [1 Fed. Cas. page 1094]

she becomes herself responsible for the injury which she ought to have prevented. In this case, the Spanish authorities ought to have restored the vessel to the owner when she was brought into San Andres; having failed to do so, the government was bound, through its minister, to have interposed before condemnation in England, and to have demanded her restoration; and if this demand had been made, the vessel could not have been lawfully condemned in England, but must have been restored. The American had a right to suppose that Spain would perform her neutral duties, and that England, upon her application, would restore the vessel. There was, therefore, a well-grounded spes recuperandi, if such a state of things could be deemed necessary to entitle the seamen to wages. The result has proved that there was foundation for a hope of recovery, for Spain has acknowledged the obligation, and paid the damages—or what amounts to the same thing, the commissioners have so decided, and the owner has recovered damages for the loss of his vessel, and for freight; and the recovery is against Spain, and founded upon the failure of Spain to perform her neutral duty.

The seamen being entitled to wages, the next question is, for what time? The libellant remained in the vessel until she was condemned, and the freight allowed is for the outward voyage. In the case of a neutral, wrongfully captured by a belligerent, and which the nation or its courts afterwards restores or pays for, and where freight for the outward voyage has been allowed, the seamen are entitled to wages up to the time of condemnation. The reason given is, that as the seaman has a right to suppose that the capturing nation and its tribunals will do their duty, he has a well-grounded hope that the vessel will be restored and allowed to proceed on her voyage, and that his services will, therefore, be needed. The same foundation for hope existed in this case; the owner had a right to expect that Spain would demand the release of the vessel, and that she would be accordingly restored; and allowed to proceed on her voyage; and that hope was not lost until the condemnation in the prize courts of England. This case, therefore, is entirely analogous to the capture of a neutral on her outward voyage, and when after condemnation and sale, the owner receives compensation in damages. The libellant is, therefore, entitled to wages up to the day of condemnation, but no longer.

The remaining question is, whether an account is to be taken, and the wages to be reduced pro rata, on account of the expenses to which the owners have been subjected in prosecuting this claim, and on account also of the reduction to which they were compelled to submit, by reason of the deficiency of the fund out of which they were to be paid. The case of Sheppard v. Taylor, 5 Pet. [30 U. S.] 675, appears to be conclusive on this point. According to the principles adjudicated in that case, the freight and the ship itself, to its last plank, are liable to wages. The claim of the seamen is a preferred one, to be paid without any deduction for the losses or expenses of the owners; and damages in lieu of freight, or in lieu of the ship, stand on the same footing, according to this decision, with the freight or ship itself, and the wages are not liable to be charged for any share of the expenses which the owner incurred in prosecuting his claim for reparation—nor are they liable to abatement on account of the reduction of his compensation, occasioned by the insufficiency of the fund out of which he is compelled to accept payment. It is admitted, that the amount recovered for the ship and freight greatly exceeds the amount due for wages, upon the principles hereinbefore stated; and the libellant is, therefore, entitled to the full amount of his wages, up to the day of condemnation, deducting only the amount heretofore received by him. The decree of the district court is, therefore, reversed, and a decree made in favor of the libellant for the sum of $184.49 and costs.